No. 13,692.

MORRIS WOLF VS. MRS. M. E. EDWARDS.

SYLLABUS.

An act done by a party prior to the petition for his or her interdiction cannot be annulled except upon proof that the cause of such interdiction notoriously existed at the time when the act was done, or that the person who dealt with the party of unsound mind could not have been deceived as to the state of his or her mind.

APPEAL from the Civil District Court, Parish of Orleans —*St. Paul, J.*

*Dart & Kernan,* for Plaintiff, Appellee.

*William S. Parkerson,* for Defendant, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. This is a proceeding *via ordinaria* for the collection of a mortgage note of seven thousand dollars, with interest, attorney's fees, etc. Judgment for the amount of the note is asked, with recognition and enforcement of the special mortgage securing the same.

The defense, in effect, is that the defendant was *non compos mentis* when she executed the note and mortgage; that soon thereafter she was interdicted; that the judgment of interdiction was duly published; that Geo. A. Hero, from whom the plaintiff acquired the note, was, by his situation, surroundings and information, charged with knowledge of her mental incapacity at the time the note and mortgage were executed and at the time he negotiated the note; and that his vendee of the note (plaintiff herein), having acquired the note after the publication of the judgment of interdiction, is likewise chargeable with knowledge of the facts and cannot recover without proof of consideration for the note having enured to the benefit of the maker.

The suit was brought against the curator of the interdict and it is he who urges the above defense.

The judgment of the trial court was in favor of the plaintiff and the curator prosecutes this appeal.

*Ruling*—We find that this note and mortgage were executed on the 22nd of March, 1899. The note is in the usual form, drawn by the

maker to her own order and by her endorsed, and paraphed by the notary to identify it with the act of mortgage.

Mrs. Edwards, against whom at that time no interdiction proceedings were pending, appeared at the office of the notary, accompanied by her two sons, one of whom was yet a minor.

The notary was a lawyer as well as notary and at the request of these parties he took the necessary steps to emancipate the minor.

The petition for emancipation was drawn, the mother and tutrix signed a written consent to the emancipation, the parties, including the mother, went before the Judge, and on the showing made, with the parties before him, he entered up and signed a judgment of emancipation.

The purpose of this was to relieve the younger son of the disabilities of minority, to the end of making a settlement with him of his interest in the estate of his deceased father, administered by his mother tutrix, and, following this settlement, to have erased and canceled the legal mortgages existing on the mother's property in his favor.

It appears that a settlement was effected and in due course the mortgages were canceled and erased.

On the day the judgment of emancipation was signed, at the request of Mrs. Edwards, or that of the older son made in her presence, the notary prepared the mortgage in question here, and the note sued on, with other notes, and the same were signed and executed by her. There was merely a nominal mortgagee. The notes were intended for negotiation to other parties. In other words, they were to be put upon the market.

The notes, it seems, were left in charge of the notary until the 3rd of April, 1899, at which time the older son, Daniel Edwards, called and obtained the delivery to him of two of them, and these two, aggregating $14,000, he negotiated, the same day, to George A. Hero, who paid him therefor in cash (check) $4,874, and delivered up to him a note for $9000 drawn by Mrs. Mary E. Edwards, the defendant herein, and endorsed by Daniel Edwards, which note he (Hero) held for value paid before maturity.

One of the notes thus acquired by Hero forms the basis of this suit.

It was payable one year after date and drew 7 per cent. interest from date.

Hero kept the two notes until December 27th, 1899, and then negotiated them to the plaintiff herein, who paid him therefor in cash on

that day $14,762.20. The one sued on matured March 22, 1900, and not being paid was protested and this suit followed.

Interdiction proceedings against Mrs. Edwards, taken at the instance of her married daughters, were begun April 11, 1899, and culminated April 26th in a judgment of interdiction. This judgment was published in two of the New Orleans newspapers from and inclusive of ·May 4th to and inclusive of June 3rd. All the parties reside in New Orleans.

It thus appears that when the note and mortgage were executed, and when Geo. A. Hero acquired the same, no interdiction proceedings against Mrs. Edwards had been taken.

It appears, further, that the time at which the plaintiff, Wolf, acquired the note was *after* judgment of interdiction had been pronounced and published.

Though Wolf acquired the note from Hero subsequent to the interdiction and its publication, he is entitled to claim and assert the same rights in and to it that his transferror had.

In point of fact Wolf had no knowledge whatever of the mental unsoundness of the maker of the note, nor of the interdiction proceedings that had been taken, nor of the judgment of interdiction. He had not seen or been told of the publication of this judgment. He bought the note as an investment, in good faith, for value before its maturity.

Mrs. Edwards executed the note and mortgage twenty days before she was proceeded against for interdiction, and thirty-five days before the judgment interdicting her was rendered.

Hero acquired the note sued on eight days before the interdiction proceedings began and twenty-three days before the judgment was rendered.

The plain codal provisions of the law are determinative of the controversy.

Article 402 of the Civil Code declares:—

"No act anterior to the petition for the interdiction shall be annulled, except where it shall be proved that the cause of such interdiction notoriously existed at the time when the acts, the validity of which is contested, were made or done, or that the party who contracted with the interdicted person could not have been deceived as to the situation of his mind." To the same effect is Article 1788 of the Code.

There is no proof in this record that any cause for interdiction of

Mrs. Edwards notoriously existed either at the time she executed the note, or at the time Hero acquired the same. Nor is there proof that Hero, at either date, knew of her mental unsoundness.

Hero acquired the note, paying value therefor before its maturity, from one in apparent legitimate possession of it, to-wit:—the son of the maker.

The circumstance that he and this son were brothers-in-law—had both married into the family of Mr. O. C. Oliver—is not sufficient to charge him with knowledge of the mental unsoundness of the mother of his brother-in-law, supposing it to be true that such mental unsoundness existed at the time the note was executed and at the time he negotiated it.

Neither is it sufficient to charge him with knowledge that the instrument originated in fraud and illegality on the part of the son, if it be true that such was the case.

It is shown that Mrs. Edwards had been in the habit of lending her name and credit to her son, and that Hero had repeatedly, prior to his acquisition of the note sued on, discounted her paper at the request of the son.

Judgment affirmed.

Rehearing refused.